Good morning, your honors. Dennis Price for the appellant again, in this case, Orlando Garcia. Much in the manner of the last case, we're going to be speaking about the accessibility features of a particular website. This one is a little different than the prior case that we just spoke about, in that there's actual ambiguity in the information that is being presented on the website. There's the cliché that a picture is worth a thousand words, and in this case, the website had a number of pictures present, and those pictures demonstrated non-compliance with the ADA, while the text under those pictures suggested the room was accessible. And so, an individual looking at that webpage would not be able to assess independently whether that information is sufficient to let them know if it's going to meet their accessibility needs. And in fact, it might have given an inference that it wouldn't be enough as a result of the inconsistency. And so, I think we're looking at a situation in this case where there's a clear issue of fact, and a reasonable jury could look at this and say, oh, well, you just gave us a picture of a non-compliant shower, told us that the shower was non-compliant, and then said that's good enough. So, what do you do with the pictures of which judicial notice were taken? Do those contradict the allegation in the complaint and the picture that was included in the complaint? I don't think it contradicts it, Your Honor, no. Well, I have a question about that, because my understanding was that the defendant offered these judicial notice of the website and said, these are the relevant parts of the website. The court accepted that. Nobody on your side objected. Nobody on your side asked for the court to take additional judicial notice of other parts of the website. And in the parts of the record which are judicially noticed, I don't see any pictures of bathrooms that are non-compliant or some of the internal ambiguity that the complaint alleges. Yes, Your Honor. Much of that was included in the complaint. We had those factual allegations as well as pictures that were included in the complaint. It was put before the court, but effectively the interpretation seems to be that we exclude pictures because the DOJ doesn't explicitly require that pictures be present. And it's sometimes common that hotels put pictures that aren't necessarily representative of the room you'll be booking. And we're supposed to disregard those because the language that was put under the pictures effectively says we shouldn't trust them. And I don't think that's reasonable. I think a guest should be able to accept that this is a representative picture of the room, even if it's not a particular picture of the room. But even going further, when the DOJ put forward the 36302 guidelines, the idea that all guest rooms are fungible was sort of rejected. That might be the case for non-accessible rooms, but there might be only one room in a particular hotel that meets a given plaintiff's needs. We represent one, one plaintiff who is both a wheelchair user and has hearing disabilities. And as a result, it's very common that he can't find a particular room that meets his needs. And when we look at something like the Marriott websites, you have no way of knowing because you sort of have to pick your, sort of like he doesn't know what he's going to get. And in this case, Mr. Garcia is in a similar situation where he's being shown information on the website. And this is put forth in the record that there's inconsistencies in the information provided. One room. Counselor, can I, I'm not sure you understood the question I was asking. And so let me try and rephrase it and maybe apologize for lack of clarity. So we have taken judicial, the district court took judicial notice of the relevant parts of defendant's website. Can you show me within that part of the record where there's any internal inconsistency? No, Your Honor. I definitely can't. I don't believe the judicial notice limits the record. That was the particular pieces that the defendant wanted to put forward for the record, but that wasn't defining the entire record. It was judicially noticeable. The court recognized that the entire website was open to judicial notice, and it was meant to counter the photographs that we had already produced or the information that we had already produced. So I don't think that constrains the record just to those sections or defines those as the only relevance. We concede those sections are relevant, but not the solely relevant sections of the record. You know, this may be parsing it or reading it too precisely. As I look at the page in which judicial notice is requested, it says, Arabic 2, a copy of the relevant pages. It doesn't say copy of relevant pages. Now, if you take the word the out, your position's easy. Your position requires that I ignore the word the. It may be that that's just cutting it too fine at this point, but the relevant pages suggest that those are the only relevant pages. Yes, I think that is a statement of perspective from the author. I don't think it's a constraint on the record, Your Honor. I readily concede that both the defendant and the judge who, I guess, accepted the position of the defendant, believe those were the only relevant sections, but I don't think that excludes the relevance of other sections that were being left out as this court's reviewing that record de novo and can determine that these other pieces are, in fact, also relevant. You know, one of the problems with websites is they change. So, a question I have is, I can go to your complaint and then I can click on the website, but I don't know what's the date of that website. Do you have a look back or a frozen in time reference that tells us when your photographs that you present were on the web? In our complaint, we note when the, I don't have it sitting right in front of me here, but I know we have the note of when Mr. Garcia was there and when it was investigated. We don't have any way of knowing whether it's been changed in that interim period, but given the quick way in which a website can be changed, it would seem that that would not constrain us, given that the court or the defendant could readily change their website at any given point. That's the sort of, I guess, voluntary cessation issue that it could easily recur. So, just to cut to the chase on terms of the room conflict that you're talking about, it says it's accessible, but then it says it may not be accessible. Is that the problem? That's one of the problems. That's the textual conflict. There's also the section on, I believe it's our record, 163, where there's actually a photo of a roll-in shower that is objectively not compliant. You could look at that photo and see that the room or that represented as compliant feature is actually not compliant with the ADA. And so, someone knowing that would see the statement that there's an accessible roll-in shower, a picture that there's not a roll-in shower, and have no ability to make that determination because that photo has a note that says this might not represent your room. And so, any... That may not represent your room, and in fact the shower may be compliant. This one's not compliant, but we may give you a compliant one. Yeah, this is supposed to be a representative example of a compliant shower. We're not compliant, but we're telling you that our hotel room is accessible, and we're suggesting that that meets this ADA standard of giving you enough information to decide on your own, and I frankly just don't think that's reasonable. I would like to reserve the rest of my time for rebuttal without asking to go over stuff. No problem. You may. Thank you. Thank you, Your Honors. May it please the Court, Philip Stillman. Still Philip Stillman. Right. And Your Honor, here's the thing about these pictures. I mean, first of all, the picture... No court has said that somebody looking at a picture has the qualifications to determine whether a picture accurately depicts a compliant or non-compliant hotel room. But more importantly... No, no, wait a minute. If I accept the allegations of the complaint and their interpretation of the regulation, it's just dead-bang obvious that that grab bar that sits right over the bench is not compliant. Well, see, this is a perfect example of the issues raised by DOJ in the 2010 guidance, because the picture specifically disclaims that this is representative of a particular room. That doesn't solve the problem, because what the regulation says is that someone looking at the And this one just hopelessly confuses me. It shows me a room that looks like it's supposed to be compliant. They've got grab bars and a seat and so on. It's obviously... If somebody knows the regulations, it obviously doesn't comply. And then there's something that says, but this doesn't represent. How is somebody supposed to, looking at the website, reasonably determine whether or not the room will meet his needs? I'm hopelessly confused if I'm at that picture on the website and I'm trying to decide whether I can use that shower. Sure. Well, first of all, obviously, images may not fully represent the room features you booked. So that's one issue. For example... But I'm not talking about the other room features. I'm talking about the shower. I'm talking about this picture. Right. And I am too. And so in this picture, it does not necessarily represent the room, any of the accessible rooms or the accessible room that you book. And so the default position on that is that you look at the accessibility features of the room and the accessibility. For example, this might be a movable or a removable seat in the in the shower. It may not be fixed. So those are issues which are different, which differ in the ADA accessibility guidelines. You know, that's fantasy land to think that that it's going to be removable. I don't think so, Your Honor. I think that that is not that if you look at what's disclosed in that picture, it's not it does not show any fix. It's that it's fixed to any wall. Well, I think the problem is this going back to the old picture is worth a thousand words. You know, we don't really if you need an ADA accessible room, you ought not need a lawyer to navigate the website and figure out which one you should click on. So once you give the picture and you say, we have accessible showers or accessible rooms with the right kind of grab bars, and then you show this picture, but that might not be your room. How do I know what one to click? That's really the problem is that by offering up the picture, which has some features of isn't really a person who needs ADA accessible showers knows what the general parameters are that they might need. They look at the picture. Where do I click? How do I know? How do I know I get one of those rooms? Sure. Judge, there are several different ways to comply for a shower in the specifics that we're talking about today to comply with the ADA accessibility guidelines. And so the default position, if you take a look at the extensive list of accessibility features, it specifically refers to roll in shower, shower wand adjustable, and transfer shower, bathtub seat, bathtub grab bars. So these are all things that Merritt has disclosed relating to all their accessible rooms. And if there's a concern, for example, that a particular guest has a particular need for a particular room and there's any concern or ambiguity, the DOJ 2010 guidance addresses that issue by directing somebody post reservation to call the hotel to talk about or learn about the specific physical features of the accessible room that they're booking and whatever needs those might have addressed. Do you contend that this picture was not on the website? You offered the other pictures. I'm not sure they contradict the allegation of the complaint that this picture was on the website. Do you contest that this was on the website? I am not aware of whether or not it was on the website, but I'm going to assume that at some time it was taken from the website. I have no knowledge of whether it was or was not, because it was not an issue that I thought was necessary to address. This is true for both counsel. You can't just throw up this is the website. I mean, it's true both for Mr. Price and for you in terms of what's the timing of his client's or timing of his trying to access the website and what was the state of the website at the time. From Marriott's point of view, it leaves the court in kind of a conundrum of is there a factual issue as a result? Because we don't know. I don't think there is in this particular case. I think if there were other pictures that Mr. Price wanted to include in the record, he should have included those in the record, but I think that that begs the question. When the DOJ in the 2010 guidance says for specific detailed information regarding the layout of the room or the bathrooms or any other accessible features, the guest should call the hotel to talk to someone specifically about their concerns, and even accepting the fact that this picture has any evidentiary value whatsoever, it still is exactly what the DOJ requires. Do you contend that this picture shows a shower that is compliant? I don't contend either way. I don't know whether it is or not. Do you disagree then with the contention from the other side that this grab bar is inappropriately placed? I do. How do you do that? I mean, I read the regulation. It looks to me as though it is. Well, I disagree because I think the regulation not having it in front of me shows whether or not it's a fixed seat in there as compared to a transfer seat that's movable or removable. And so, and I think the ADAC guidelines regarding that issue differ in that sense. Let me move on to the other thing that's highlighted in the complaint. I'm on paragraph 23, which I'm sure you're familiar. It says accessible room features, and then it's got two sentences, one contradicting the other. Do you contest that those were in the website? I don't know whether that was on the website at the time Mr. Garcia viewed it, but I'm accepting for the sake of argument that it was taken from the website. But again, it's not part of the website. It's not part of the record in this case. What do you mean it's not part of the website, not part of the record? We have a complaint. I'm sorry, Your Honor. I misspoke. It is part, obviously, it's in the complaint, but there's no evidentiary support for that. Well, at this stage, does he need evidentiary support? Doesn't he just need the complaint? He does, because if it's contradicted by those matters that are subject to judicial notice, which the relevant portions of the website are, then he does have to come forward. Wait a minute. What parts are contradicted by features applied to the different Marriott rooms provided in the evidentiary record at page 31? 31 of the excerpts of record? Yes, Your Honor. Let me turn to that. You're just giving me the stuff that you put in, right? Correct, Your Honor. That's what's in the record. How does that contradict? I mean, what you put in shows me a picture of the bed. It doesn't show me a picture of the shower. Right, because that's the room that goes to the what is required of the 2010 guidance, which is the type of room, number of beds, size of beds, et cetera. But wait a minute. You just said it contradicts. I don't see the contradiction. I see a picture of a bedroom, several pictures of different bedrooms. I see no pictures of showers. What I'm talking about, what I was referring to when I say contradicts, Your Honor, is the accessibility list for guest room accessibility for all of the accessible Marriott ADA accessible rooms at this hotel. And there's a list at page at excerpts of record 31 that says what those items are that are listed on that are applicable, excuse me, to all of the ADA rooms. Let me put the case sympathetically to the other side. And on this point, I have to say I'm somewhat sympathetic. I go to this website. I see something that says accessible rooms features, and then it gives me two sentences that flatly contradict each other. They show me a picture that says, well, this may or may not represent, but obviously it's an attempt to show a shower that's compliant that as shown does not comply. And then I ask myself, can I, and I'm just quoting now from the regulation, information in enough detail to reasonably permit individuals' disability to assess independently whether a given hotel or guest room meets his or her accessibility needs. I'm hopelessly confused by what I just saw on the website. I cannot reasonably determine from what I saw whether or not it satisfies me. What's the response to that? You know, I have to default back to, I mean, there's certain, I certainly understand the point, but there are different ways of accessible rooms, and there are different ways of meeting accessibility standards in a room. Well, I get that also, but what I'm after is the requirement that I'm supposed to be able from the website to reasonably determine. And I've got contradictory statements. I've got a picture that doesn't comply. Maybe that seat's removable or movable within the shower, although I have to say I doubt it. And you're saying, what, I've got to call the hotel to see if the picture, in fact, is the seat movable? Well, as a practical matter, Your Honor, if the concern was that, I mean, remember, the 2010 guidance requires the hotel to disclose those important features of the room. Now, every portion of the ADA accessibility guidelines is important to someone, and it's important in general, because they're listed there. So all you're looking at in requirements for a hotel reservation website is the picture from altitude of what generally is accepted, what generally is necessary. And even in this kind of room, Mr. Garcia, the website clearly says that it offers accessible rooms with roll-in showers. It also specifically talks about the various features of the hotel bathroom, and it also gives detail about the room itself and the fixtures and the actual, you know, fixtures of the room, such as the toilet seat, whether it's hearing impaired, accessible, viewports lowered, those types of things. So it even gives all of that confused, which I submit he isn't. But if he's legitimately confused, the answer is not to require that a hotel website include more information than it's required to, but that it's addressed by a call to the hotel with a concern regarding the specifics of the bathroom layout, which is something specifically identified by the DOJ in the 2010 guidance that a plaintiff or a person with disabilities should be able to get after the reservation is made. So in this case, even if there's some ambiguity, and this was an important issue for Mr. Garcia, the burden is on him by the 2010 guidance to call the hotel and say, hey, I need a seat. I don't want grab bars in this part of the shower, or whatever it is that he wants. And that's the specific type of information that the Department of Justice in its wisdom in interpreting the statute, the regulation, has said is the kind of information that a person can obtain after making the reservation. Now, Mr. Garcia never made a reservation. He never asked about anything. All he did was look at the website and sue. And that's not sufficient under the 2010 guidance. And I think that a reasonable review of what Marriott has disclosed in these room accessibility disclosures shows more than enough information for the vast majority of people to make a decision as to whether they want to stay at the Marriott. Because remember, Your Honor, most people... Thank you. I think we've got your argument in mind. Maybe the hazard here is you disclosed too much information. The wrong shower, perhaps. I don't know. We'll try to resolve that. But back to Mr. Price. Thank you, Your Honors. The DOJ has made a lot of statements with regards to these regulations. And one of them was that they were not going to make the guests call and consult the hotel because the information needed to be on the website, and that a disclosure of accessible does not necessarily ensure that the room will be accessible. And I think this removable seat concept really underscores part of the problem with just accepting blindly that the language on the website is binding. There are at least three different configurations that can be called a roll-in shower that are all different and would only work for some people with disabilities versus others. And so requiring a person with a disability to make a phone call with this information that is supposed to be provided and this information that has already been called out even by the DOJ's very narrow interpretation as necessary and still being left with ambiguity, I think we've come up very short of allowing that individual to make a decision independently. And while Mr. Stillman's right, the majority of people don't need this information, the ADA is not concerned with the majority of people. It's concerned with people who have a particular need. By default, the people with disabilities are outside the majority and need more. And so when Mr. Garcia brought his complaint, he made his allegations. This was on motion to dismiss. It was a well-pleaded complaint. And none of the evidence that was provided on the motion to dismiss refuted it. It simply didn't think it was relevant. But at this stage in the case, Mr. Garcia should be able to get through a motion to dismiss, and he should be able to take this to a jury and allow a jury to see if they'd be confused, if they would be confident allowing their, you know, booking a room for their grandmother and whether or not she would be able to use that room, knowing that there's a chance that she might get there and find that she can't. And I posit that very few people would be comfortable with that. But the district court in this case was comfortable with dismissing the case and not allowing that to go forward, even though the question of reasonableness is still in front of us. So with that, I would submit to your honors and thank you for the time. Thank you to both of you. Obviously, two counsel who are very familiar with these rules and regulations, so we appreciate that. The case just argued is submitted, Garcia v. E.L. Heritage, Inn of Sacramento.
judges: McKEOWN, FLETCHER, Vratil